UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH A. SHARONOFF,<br><br>  Petitioner,<br><br>  v.<br><br>WARDEN,<br><br>  Respondent. | No. 2:13-cv-0794 TLN AC P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on April 15, 2013,[1] ECF No. 1, which challenges petitioner's 2010 conviction for second degree murder and related offenses. Respondent has answered the petition. ECF No. 11. Petitioner did not file a traverse. For the reasons that follow, the undersigned recommends that the petition be denied on the merits without an evidentiary hearing. The court will also deny petitioner's motions for an evidentiary hearing. ECF Nos. 82 & 83.

BACKGROUND

I.  Trial Court Proceedings

The following statement of the case is taken from the unpublished opinion of the

---

[1] See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1

California Court of Appeal on direct review:[2]

> Defendant Kenneth Allen Sharonoff was living at a homeless camp in Placerville when he shot to death another resident of the camp, 68–year–old Clark McCabe. A jury convicted defendant of one count of second-degree murder, one count of elder abuse resulting in death, two counts of possession of a firearm by a felon, and one count of possession of ammunition by a felon. The jury also found various enhancement allegations to be true, including the personal discharge of a firearm resulting in death and the personal infliction of great bodily injury. Following a bifurcated hearing, the trial court found that defendant had been convicted of two prior strike offenses within the meaning of the three strikes law (Pen. Code, §§ 667, subd. (b)-(i), 1170.12). The trial court sentenced defendant to an indeterminate term of 70 years to life plus a consecutive determinate term of 10 years in state prison and imposed other orders.
>
> On appeal, defendant contends the trial court prejudicially erred and violated his constitutional rights by (1) admitting into evidence two prior convictions for assault with a deadly weapon for the limited purpose of establishing defendant's intent to kill, and (2) failing to instruct the jury on the theory of imperfect self-defense as a means of mitigating murder to voluntary manslaughter. We disagree and affirm.
>
> FACTS
>
> In January 2010, defendant lived in a homeless camp behind Prospector's Plaza in Placerville. The makeshift camp was set up in a field of manzanita and other scrub vegetation. Several worn paths led to the various campsites. The "mayor" of the camp was a 68–year–old man named Clark McCabe, who also went by the name "Otto." According to Tommy Aldrich, another camp resident: "Otto was like the senior of the camp. He was everyone's—he had, you know, like authority like who could go, who could stay, and he was just like the peacekeeper of the camp." Paul Oakes and his mother also lived at the camp; Oakes went by the name "Cody" and was one of defendant's friends. The camp was also home to Jeremiah Rands and his girlfriend Heather Whitney.[3]
>
> On the evening of January 23, 2010, Tommy was visiting Jeremiah and Heather at their campsite when defendant arrived carrying an old, rusted, single-action black powder revolver. Defendant appeared to be drunk and waved the gun around while "ranting and raving about something." The weapon was cocked and ready to fire. When defendant put his arms around Tommy, resting the gun on his shoulder, Tommy asked defendant to put the gun away.

---

[2] The undersigned has independently reviewed the trial record, and confirms the accuracy of the state court's recitation of the evidence presented at trial.

[3] [Fn. 1 in original excerpted text]. We will refer to Clark McCabe and Paul Oakes by their respective nicknames, Otto and Cody. We will refer to the other camp residents by their first names.

2

Defendant apologized and complied with the request, placing the gun in his pants.

Later that night, defendant was at his campsite when Cody arrived and asked if he wanted to watch a movie. Defendant declined, explaining that Otto had his crossbow, and that he wanted to get it back so he could sell the weapon. Cody agreed to meet defendant at Otto's camp, but first needed to get some water from his campsite. Both defendant and Cody were wearing head lamps to allow them to navigate the dark trails through the camp. A few minutes later, as Cody approached Otto's campsite after retrieving a water jug, he heard defendant and Otto arguing over the crossbow. Defendant demanded: "I want my crossbow back." Otto responded: "No, you can't have it. You owe me money." By this point, Cody could see defendant pointing a gun at Otto's head. Defendant pulled back the hammer and said: "Oh, yeah?" Otto replied: "You just made the biggest mistake of your life." And as Otto pulled what appeared to be a cell phone out of his pocket, defendant pulled the trigger. He then pulled back the hammer and fired a second shot as Otto fell to the ground.

Each round delivered a fatal wound. The first round struck Otto in the chest, penetrating both lungs and lodging behind his shoulder blade. This wound caused Otto to begin to convulse and slowly collapse. The second round entered Otto's lower back as he doubled over, penetrated the spleen and left lung and lodged beneath the collarbone. Otto died as a result of these injuries.

Defendant then ran up a hill through a nearly impassable trail. Shaken up by what he had seen, Cody slowly walked to defendant's camp to find out what "actually happened." When he arrived a few minutes later, defendant was rustling around in his tent. Jeremiah then showed up and asked if they wanted to hang out at his campsite. Defendant said that "he'd be right over," so Cody and Jeremiah walked to Jeremiah's campsite together. After Cody told Jeremiah about the shooting, they decided to wait for defendant to arrive at the campsite, and then Jeremiah would walk down to Cody's mother's campsite to inform her of the situation. Defendant arrived 10 to 15 minutes later. Jeremiah excused himself to use the restroom and walked to Cody's mother's campsite. Acting on her advice, Jeremiah walked to Otto's camp to make sure this was not a prank. Finding Otto motionless on the ground, Jeremiah ran back to his campsite to make sure Heather was safe. He then took her cell phone, again pretended he needed to use the restroom, and called Cody's mother on her cell phone to tell her Otto was dead.

Deputies from the El Dorado County Sheriff's Department responded to a 911 call reporting the shooting. The camp was cleared early the next morning and its inhabitants detained for questioning. Otto's body was also recovered. Later in the day, Cody assisted the officers in an unsuccessful search for defendant's revolver. Cody resumed the search the following day with four camp residents and eventually found the gun in the manzanita field near a place defendant had previously used to stash drugs. Leaving the gun in place, Cody called the sheriff's department and deputies

3

> came out to retrieve the weapon.
>
> Defendant's campsite was searched pursuant to a search warrant. Deputies recovered several lead balls, five of which were covered with black powder, some .38 caliber cartridges, a spent shotgun shell casing, and a homemade zip gun.

People v. Sharonoff, No. C066292, 2012 Cal. App. Unpub. LEXIS 1453, 2012 WL 637076, at *1-2 (Cal. Ct. App. Feb. 27, 2012).

## II. Direct Appeal

Petitioner timely appealed and the California Court of Appeal affirmed the judgment of conviction on February 27, 2012. Id. at *2, 2012 WL 637076 at *1. The California Supreme Court denied review on May 9, 2012. Lodged Doc. 8.

## III. State Habeas Proceedings

Petitioner did not file any state habeas corpus petition challenging his convictions until after he had filed the instant § 2254 petition in federal court. His first state habeas corpus petition was filed in the El Dorado Superior Court on February 24, 2014 and denied on April 3, 2014. See ECF No. 24-1 at 95-100. Petitioner filed a separate state habeas petition in the California Supreme Court on May 6, 2014, which was denied on June 25, 2014. See ECF No. 33 at 2-11 (state habeas petition); ECF No. 31 at 2 (postcard denial issued by the California Supreme Court).

## IV. Federal Habeas Proceedings

The instant federal petition was constructively filed on April 15, 2013.[4] ECF No. 1.

---

[4] Petitioner's original § 2254 petition has been previously summarized by the court as follows:

> In the federal habeas corpus petition filed on April 15, 2013, petitioner raised six separate claims for relief.[] ECF No. 1 at 5. First petitioner asserts that the trial court prejudicially erred in admitting prior bad act evidence from 1986 and 1994. Id. Secondly, petitioner alleges that he received ineffective assistance of counsel without identifying any specific acts or omissions that prejudiced him. Id. Next petitioner contends that the Three Strikes Law is a violation of the ex post facto clause. Id. In his fourth claim for relief, petitioner alleges that the trial court imposed an illegal enhancement for elder abuse because the victim was suspected of fraud against the federal government. Id. Petitioner also contends that the police tampered with evidence. Id. Because petitioner attached a copy of his opening brief on direct appeal in the California Court of Appeal containing an additional challenge to the trial court's failure to instruct the jury on imperfect self-defense,

4

Respondent answered on June 7, 2013. ECF No. 11. Petitioner did not file a traverse.

On January 27, 2014, petitioner filed a "motion to quit claim." ECF No. 13. This court denied petitioner's motion without prejudice to refiling either a motion for voluntary dismissal or a motion for stay and abeyance. ECF No. 15. In response, petitioner filed a motion to stay, ECF No. 19, which he renewed one month later, ECF No. 22. Petitioner also filed two amended § 2254 petitions, ECF Nos. 21 and 24.

On June 3, 2014, the undersigned issued findings and recommendations on petitioner's motions for a stay and his amended § 2254 petitions. In light of the objections filed by petitioner, the court vacated the findings and recommendations on July 17, 2014 and ordered petitioner to file a copy of the habeas petition that he had filed in the California Supreme Court. ECF No. 32. Petitioner complied with the court's order on July 28, 2014.

On September 3, 2014, the undersigned issued findings and recommendations denying petitioner's motions for a stay and directing petitioner to file either a notice electing to delete the unexhausted claims from his original petition and to proceed on the merits of his remaining exhausted claims, or a notice of voluntary dismissal of the case without prejudice.[5] ECF No. 36 at 11. In the same order, the court recommended that petitioner be denied leave to amend and that his amended petitions, ECF Nos. 21 and 24, be stricken from the docket. Id. Petitioner filed objections and supplemental objections to the findings and recommendations. ECF Nos. 38, 39.

On September 22, 2014, petitioner filed a motion to amend his §2254 petition. ECF No. 37. Respondent did not oppose the motion. Petitioner then filed a motion for an evidentiary

---

the court will liberally construe this as petitioner's sixth claim for relief. ECF No. 1 at 16-63.

ECF No. 36 at 2-3.

[5] In the September 3, 2014 findings and recommendations, the undersigned determined that petitioner had exhausted only two of the six claims included in the original petition. See ECF No. 36 at 5-6. Specifically, the court found that "[t]he only exhausted claims in petitioner's federal habeas petition are his challenge to the trial court's admission of prior bad act evidence . . . and the challenge to the trial court's failure to instruct on imperfect self-defense." Id. In considering whether petitioner should be granted a stay to allow him to exhaust the four remaining claims, the court determined that a stay was not warranted because the four unexhausted claims lacked merit. See Id.

5

hearing and request for release, ECF No. 41, and a motion for discovery, ECF No. 42. Respondent opposed both motions, ECF No. 44, and petitioner replied, ECF No. 47.

On October 31, 2014, the district judge adopted the September 3, 2014 findings and recommendations in full. ECF No. 43. In response, petitioner filed a letter to the court, apparently requesting reconsideration of the October 31, 2014 order. See ECF No. 45 at 8. Approximately one week later, the court received petitioner's timely notice to amend his mixed petition to delete the unexhausted claims from his original petition. See ECF No. 46. In his notice, petitioner also appeared to request that the court "reattach" his "now fully exhausted claims." See ECF No. 46 at 1.

On July 17, 2015, the undersigned issued an order and findings and recommendations recommending that petitioner's request for release and motion to amend be denied. ECF No. 52 at 11. The court also denied petitioner's motion for an evidentiary hearing, his request to "reattach" claims, and his motion for discovery. Id. In addition, the court acknowledged petitioner's notice electing to delete his unexhausted claims from his original petition, ECF No. 46, and clarified that as a result of this election, the original petition, ECF No. 1, consists of only two claims: petitioner's challenge to the trial court's admission of prior bad act evidence from 1986 and 1994 and the challenge to the trial court's failure to instruct on imperfect self-defense. See ECF No. 52 at 4. Accordingly, these are the only two claims presently before the court.

On July 30, 2015, petitioner filed objections to the July 17, 2015 order and findings and recommendations. ECF No. 55. On August 26, 2015, petitioner filed a motion to vacate the July 17, 2015 order and findings and recommendations, ECF No. 57, which the court construed as a motion for reconsideration. Upon reconsideration, the undersigned affirmed the July 17, 2015 order and findings and recommendations. ECF No. 58.

On September 16, 2015, petitioner filed a notice of interlocutory appeal of the July 17, 2015 order and findings and recommendations. ECF No. 60.

On September 22, 2015, the district judge adopted the July 17, 2015 findings and recommendations in full and denied petitioner's request for release and motion to amend his federal habeas petition. ECF No. 63.

6

On October 26, 2015, petitioner filed a notice of interlocutory appeal of the September 22, 2015 order adopting the July 17, 2015 findings and recommendations. ECF No. 66.

On January 26, 2016, the Ninth Circuit Court of Appeals dismissed both of petitioner's interlocutory appeals, ECF Nos. 60 and 66, for lack of jurisdiction. See ECF No. 70. Specifically, the Ninth Circuit found that jurisdiction was absent because the orders challenged in the appeals were not final or appealable. See id. The judgment of the Ninth Circuit Court of Appeals took effect on February 18, 2016. See ECF Nos. 72 & 73.

On February 17, 2016, petitioner filed a "motion for [disposition of] all claims as to all parties, or final judgment of issues and claims."[6] ECF No. 74. This motion is currently pending before the court.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

---

[6] This motion appears to be a response to the language in the Ninth Circuit's January 26, 2016 order indicating that an order is "not appealable unless it disposes of all claims as to all parties." See ECF No. 70 at 1.

7

unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

////

# DISCUSSION

I. Claim One: Admission of Prior Convictions from 1986 and 1994

   A. Petitioner's Allegations and Pertinent State Court Record

Before trial, the prosecution moved to admit three prior acts of violence perpetrated by petitioner. CT 316. These acts were: (1) the 1986 shooting of Ralph "Hoxie" Dan; (2) the 1994 bludgeoning of Philip Chassey; and (3) the 2006 stabbing of Steven Hamby. Id. Defense counsel moved to exclude these same acts. CT 360.

Following a hearing on the proposed testimony, the trial court ruled that the 1986 and 1994 incidents could be admitted for the limited purpose of proving petitioner's intent to kill.[7] RT 370-373. At trial, the jury heard the following testimony regarding two of petitioner's prior convictions, as summarized by the California Court of Appeal:[8]

> On March 23, 1986, defendant was 18 years old and lived with his mother, Pat Thompson. Kim Thornton and her three children also lived with Thompson, who allowed the four-some to move in because of marital problems between Thornton and her husband, Ralph Hoxie. Hoxie stopped by to see the children and ended up in an argument with Thornton at the front door. After several minutes of arguing, Thornton asked Hoxie to leave. He continued to argue with her. Defendant then came to the front door with a black powder revolver, pointed the gun at Hoxie's face, and pulled the trigger. Hoxie turned and ran as the shot was fired, causing the bullet to graze his neck about two inches below his left ear. Based on these facts, defendant pled no contest to one count of assault with a deadly weapon and was placed on formal probation for a period of five years.
>
> On June 27, 1994, defendant was 26 years old and lived in a camper on Harry Rehder's property. Dennis O'Brien and Phil Chassey, an elderly man "somewhere in his early 80s," were also at the property that day. Defendant and Chassey got into a heated argument resulting in defendant picking up a metal tractor part and hitting Chassey several times in the head. Rehder pulled defendant off of Chassey, who fell to the ground with a black eye and blood pouring from his head. O'Brien then escorted defendant across the street, where he waited for police to arrive. Based on these facts, defendant pled no contest to one count of assault with a deadly weapon and was sentenced to three years in state prison.
>
> Over defendant's objection, the trial court admitted testimony

---

[7] The prosecution was not permitted to introduce evidence of the 2006 incident.
[8] The undersigned has independently reviewed the trial record, and confirms the accuracy of the state court's recitation of the evidence presented at trial.

regarding these prior offenses under Evidence Code section 1101, subdivision (b), for the limited purpose of establishing defendant's intent to kill. The jury was instructed that it could consider this evidence only if the People proved by a preponderance of the evidence that defendant committed these prior offenses. The jury was also instructed that it could, but was not required to, consider this evidence for the limited purpose of deciding whether defendant acted with the intent to kill in this case. The jury was further instructed to consider the similarity or lack of similarity between the prior offenses and the charged offenses, and admonished that it could not use this evidence to conclude that defendant possessed a bad character or was predisposed to committing crimes.[9]

Sharonoff, 2012 Cal. App. Unpub. LEXIS 1453, 2012 WL 637076, at * 2-5.

Petitioner argues that the trial court erred in admitting these prior acts because they were "irrelevant, remote and/or more prejudicial than probative." ECF No. 1 at 40-41. He claims their admission denied him a fair trial and violated his right to due process. Id. at 41.

////

////

---

[9] [Fn. 2 in original excerpted text]. The instruction provided in full:

> The People are going to present evidence that the Defendant committed other offenses that are not charged in this case, and you may consider this evidence only if the People have proved, by a preponderance of the evidence, that the uncharged acts—that the Defendant, in fact, committed the uncharged acts. [¶] Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the Defendant committed the uncharged offenses or acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether the Defendant acted with the intent to kill in this case, so it is offered for the limited purpose of determining whether or not in this case the Defendant possessed the intent to kill. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses or acts and the charged offenses. Do not consider this evidence for any other purpose. [¶] Do not conclude from this evidence that the Defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the Defendant committed the uncharged offenses or acts, that conclusion is only one factor to consider, along with all the other evidence. It is not sufficient by itself to prove that the Defendant is guilty of murder or that the crime of murder has been proved or that the specific intent of premeditated murder has been proved. The People must still prove each charge and allegation beyond a reasonable doubt.

B. The Clearly Established Federal Law

The admission of evidence is generally a matter of state law, and habeas relief does not lie for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991). The erroneous admission of evidence violates due process, and supports habeas relief, only when it results in the denial of a fundamentally fair trial. Id. at 72. The U.S. Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990); see also Spencer v. Texas, 385 U.S. 554, 563–564 (1967) (rejecting argument that due process necessarily requires the exclusion of prejudicial evidence).

The Supreme Court has not decided whether the admission of propensity evidence violates a defendant's due process rights. See Estelle, 502 U.S. at 75, n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); see also Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008).

C. The State Court's Ruling

Petitioner raised this claim on direct appeal. The California Court of Appeal ruled as follows:

> Evidence Code section 1101, subdivision (a), provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." However, subdivision (b) of that section provides that a specific instance of a person's conduct is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity . . .) other than his or her disposition to commit such an act." (Evid.Code, § 1101, subd. (b).)
>
> "When the prosecution seeks to prove the defendant's identity as the perpetrator of the charged offense with evidence he had committed uncharged offenses, the admissibility of evidence of the uncharged offenses turns on proof that the charged and uncharged offenses share sufficient distinctive common features to raise an inference of identity. A lesser degree of similarity is required to establish the existence of a common plan or scheme and still less similarity is required to establish intent. [Citations.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance. [Citations.] The decision whether to admit other crimes

evidence rests within the discretion of the trial court. [Citation.]" (People v. Lindberg (2008) 45 Cal.4th 1, 23; see also People v. Kelly (2007) 42 Cal.4th 763, 783.)

Defendant acknowledges that "[i]ntent, along with all other elements of murder, is a material fact where a defendant pleads not guilty to the offense." Nevertheless, he argues his 1986 and 1994 convictions for assault with a deadly weapon are insufficiently similar to the present offense to allow their admission into evidence. We are not persuaded. In each instance, an argument caused defendant to attack an unarmed man with a deadly weapon. In the 1986 offense, while defendant was not personally involved in the argument, he used the same type of weapon involved in the present offense—a black powder revolver—pointed the weapon at another man's head, and pulled the trigger. In the 1994 offense, an argument with an elderly man caused defendant to pick up a tractor part and severely beat the man in the head until forcibly removed from the victim. Similarly, here, an argument with the elderly leader of the homeless camp over the return of defendant's crossbow caused defendant to point his black powder revolver at the man's head and pull the trigger. We conclude that these offenses are sufficiently similar to support the inference that defendant probably acted with the same intent, i.e., the intent to kill, in each instance.

Nor did the trial court abuse its discretion under Evidence Code section 352 in finding the probative value of this evidence was not "substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (People v. Harrison (2005) 35 Cal. 4th 208, 229.) "'Because substantial prejudice is inherent in the case of uncharged offenses, such evidence is admissible only if it has substantial probative value.'" (People v. Lindberg, supra, 45 Cal. 4th at p. 23, quoting People v. Kelly, supra, 42 Cal. 4th at p. 783.) Here, we cannot conclude the trial court abused its discretion in finding evidence of the prior offenses had substantial probative value with respect to whether defendant possessed the requisite intent to kill. "Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially." (People v. Thomas (2011) 52 Cal. 4th 336, 355.) The fact that defendant, on two similar prior occasions, had used a deadly weapon to assault a person in circumstances evincing an intent to kill, tended logically to prove that defendant also possessed the intent to kill in this case. Absent direct evidence of such an intent, the probative value of this prior crimes evidence must be considered substantial. And while, as defendant points out, these prior crimes "preceded the charged homicide by 24 years and 16 years, respectively," this does not make their evidentiary value insubstantial due to remoteness. (See People v. Spector (2011) 194 Cal. App. 4th 1335, 1388–1389 [upholding admission of prior crimes evidence where the oldest such crime occurred 28 years before the charged crime]; see also People v. Branch (2001) 91 Cal. App. 4th 274, 284–285 [more than 30 years]; People v. Waples (2000) 79 Cal. App. 4th 1389, 1395 [18 to 25 years].)

> Moreover, the prosecutor kept the evidence relating to these prior offenses brief. Neither of the uncharged offenses was particularly inflammatory compared to the present murder charge. And, as mentioned, the trial court's limiting instructions advised the jury to consider this evidence not to prove defendant's predisposition to commit crimes, but rather to determine whether defendant acted with the intent to kill in this case. These instructions eliminated any danger of confusing the issues, or of misleading the jury. "We presume the jury followed these instructions." (People v. Lindberg, supra, 45 Cal.4th at p. 25; People v. Coffman and Marlow (2004) 34 Cal. 4th 1, 107.) Thus, the trial court did not abuse its discretion under Evidence Code section 352.
>
> Finally, we also reject defendant's contention that the admission of the prior offenses violated his constitutional rights to due process and a fair trial. He has failed to persuade us that his case presents an exception to the general rule that "[a]pplication of the ordinary rules of evidence does not infringe on a defendant's constitutional rights." (People v. Uecker (2009) 172 Cal. App. 4th 583, 599, fn. 11; People v. Lindberg, supra, 45 Cal. 4th at p. 26.)

Sharonoff, 2012 Cal. App. Unpub. LEXIS 1453, 2012 WL 637076, at * 3-5.

### D. Objective Reasonableness Under § 2254(d)

The undersigned is seriously troubled by the admission of petitioner's prior crimes in this case, because their prejudicial potential was significant. The notion that jurors can refrain from forbidden propensity inferences, even when sincerely attempting to follow the trial court's instructions, defies common sense in the circumstances presented here. Moreover, the distinction drawn by the state court between permissible use of the evidence to determine intent to kill and impermissible propensity use collapses upon examination: the prior assaults support a finding of intent to kill Clark "Otto" McCabe only if they demonstrate that petitioner had a propensity to try to kill people he was angry at. However, the question in a § 2254 proceeding is not whether the habeas judge would have made the same ruling as the trial judge, but whether the reviewing state court unreasonably applied a governing precedent of the United States Supreme Court.

There is no such precedent here. As noted above, the Supreme Court's decision in Estelle expressly left open the question of whether a state law permitting introduction of propensity evidence would violate due process. See Estelle, 502 U.S. at 75 n. 5. To date, no answer has been forthcoming. Accordingly, the state court's decision cannot have been contrary to, or an unreasonable application of, clearly established federal law. See Alberni v. McDaniel, 458 F.3d

860, 866 (9th Cir. 2006) (habeas petitioner's argument that use of propensity evidence violated his right to due process fails to meet the AEDPA threshold), cert. denied, 549 U.S. 1287 (2007); see also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) ("Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law', as laid out by the Supreme Court.").

The state court's ruling on the admissibility of the prior acts under state law is not reviewable here. The California Supreme Court has held that "the doctrine of chances teaches that the more often one does something -- such as killing -- the more likely that something was intended, and even premeditated, rather than accidental or spontaneous." See People v. Steele, 27 Cal.4th 1230, 1244 (2002). And because the evidence was relevant to the question of petitioner's intent in the victim's killing, its admission did not violate his right to a fair trial. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991) ("Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process."); see also Houston v. Roe, 177 F.3d 901, 910 (9th Cir. 1999) (holding that "admission of prior bad acts only violates due process if there are no permissible inferences the jury may draw from the evidence.") (internal quotation marks omitted).

For these reasons, this claim must be denied.

II. Claim Two: Failure to Instruct the Jury on Imperfect Self-Defense as a Theory of Voluntary Manslaughter

A. Petitioner's Allegations and Pertinent State Court Record

At trial, defense counsel sought an instruction on imperfect self-defense. RT 837-838. The request was based on witness testimony that, immediately prior to the killing, the victim stated that petitioner had "made the biggest mistake of his life" and reached into his pocket for something. RT 571. The object was ultimately determined to be a flashlight. RT 678. The trial court found that the evidence did not support reasonable or unreasonable self-defense and declined to provide the instruction. RT 838.

Petitioner argues that the trial court erred in denying the requested instruction and states

that the court had a sua sponte duty to give instructions on lesser included offenses such as unreasonable or imperfect self-defense theory of manslaughter, where the evidence is substantial enough to merit consideration by a jury. ECF No. 1 at 55.

### B. The Clearly Established Federal Law

It is clearly established that a defendant in a *capital* case has a constitutional right to a jury instruction on a lesser included offense if there was evidence to support the instruction. Beck v. Alabama, 447 U.S. 625 (1980). The Supreme Court, however, expressly declined to decide whether this right extends to defendants charged with non-capital offenses. Id. at 638 n.14. Since Beck, the Supreme Court has not addressed the question, and the Ninth Circuit has held that "the failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam). Nevertheless, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Id.

Errors in instructing the jury can only support federal habeas relief if they "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. 62 at 71. Allegedly erroneous instructions "must be considered in the context of the instructions as a whole and the trial record." Id. at 72. Additionally, a state court's reasoned interpretation that a petitioner was not entitled to an instruction under state law binds this court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); see also Mullaney v. Wilbur, 421 U.S. 684, 691 & n. 11 (1975) (holding that "state courts are the ultimate expositors of state law" and federal courts are bound by their interpretations of state law unless the holding "appears to be an obvious subterfuge to evade consideration of a federal issue.") (citation and internal quotation omitted). Finally, a state court's determination that the evidence does not support a requested instruction is entitled to a presumption of correctness from a federal habeas court. See Menendez v. Terhune, 422 F.3d

////

1012, 1029 (9th Cir. 2005); see also Hartman v. Summers, 120 F.3d 157, 161 (9th Cir. Cal. 1997).

      C. The State Court's Ruling

Petitioner raised this claim on direct appeal. The California Court of Appeal ruled as follows:

> Defendant also claims the trial court prejudicially erred and violated his constitutional rights by failing to instruct the jury on the theory of imperfect self-defense as a means of mitigating murder to voluntary manslaughter. He is mistaken.
>
> "'It is well settled that the trial court is obligated to instruct on necessarily included offenses—even without a request—when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense.' [Citation.]" (People v. Ledesma (2006) 39 Cal. 4th 641, 715.) Thus, "a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (People v. Breverman (1998) 19 Cal. 4th 142, 162; People v. Barton (1995) 12 Cal. 4th 186, 194–195.) "On appeal, we review independently whether the trial court erred in failing to instruct on a lesser included offense." (People v. Booker (2011) 51 Cal. 4th 141, 181.)
>
> "Murder involves the unlawful killing of a human being with malice aforethought, but a defendant who intentionally commits an unlawful killing without malice is guilty only of voluntary manslaughter." (People v. Blacksher (2011) 52 Cal. 4th 769, 832; Pen.Code, §§ 187, subd. (a), 192.) "Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant actually, but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter." (In re Christian S. (1994) 7 Cal. 4th 768, 771; People v. Cruz (2008) 44 Cal. 4th 636, 664.) This doctrine "cannot be invoked, however, by a defendant whose own wrongful conduct (for example, a physical assault or commission of a felony) created the circumstances in which the adversary's attack is legally justified. [Citations.]" (People v. Booker, supra, 51 Cal. 4th at p. 182, fn. omitted; see also People v. Valencia (2008) 43 Cal. 4th 268, 288.)
>
> Defendant argues an instruction on imperfect self-defense was supported by the evidence because Otto said, "You just made the biggest mistake of your life," and pulled something out of his pocket immediately before defendant pulled the trigger. Acknowledging that the doctrine of imperfect self-defense cannot be invoked where the defendant's actions have caused the victim to respond in a legally justified manner, defendant argues the doctrine

16

applies in this case because he believed pulling the trigger was required to defend against Otto's "sudden escalation of force." This argument lacks even a modicum of merit.

Defendant relies on People v. Vasquez (2006) 136 Cal. App. 4th 1176 (Vasquez), a case that illustrates the flaw in defendant's reasoning. There, Vasquez invited his cousin Arechiga to join him and some of his friends in an alley. In the alley, Vasquez, who was confined to a wheelchair, accused Arechiga of having raped Vasquez's deceased younger brother. The accusation caused Arechiga to lunge at Vasquez and begin to choke him, which in turn caused Vasquez to pull a gun and shoot Arechiga. (Id. at pp. 1177–1178.) At Vasquez's murder trial, the trial court declined to give the jury an instruction on imperfect self-defense, concluding that Vasquez "created the need to defend himself by luring Arechiga to the alley to confront him." (Id. at p. 1179.) The Court of Appeal reversed, explaining: "Imperfect self-defense does not apply if a defendant's conduct creates circumstances where the victim is legally justified in resorting to self-defense against the defendant. [Citation.] But the defense is available when the victim's use of force against the defendant is unlawful, even when the defendant set in motion the chain of events that led the victim to attack the defendant." (Id. at pp. 1179–1180.) Accordingly, while Vasquez may have been "up to no good," an instruction on imperfect self-defense was nevertheless required because it was Arechiga who "used unlawful force first." (Id. at p. 1180.)

Defendant argues that while the fact that he pointed a gun at Otto made him "appear to be the aggressor," the jury could have concluded this act "was indistinguishable from the earlier act of pointing the gun at Tommy; namely, both acts were criminal but [defendant] had no intent to kill either Tommy or Otto at either time and would have lowered the weapon upon request." Defendant goes on to argue: "If the jury believed that [he] had no intent to kill at the time, and his intent merely was to scare Otto, just like he earlier scared Tommy, then Otto's act of pulling something black out of his pocket and pointing it in [defendant's] direction gave the appearance of Otto's intent to use unlawful force first. Under these circumstances, [defendant] was entitled to assert the belief, albeit unreasonable, that he was in imminent peril and needed to resort to self-defense." The flaw in this argument should be apparent from the very statement of it. The question is not whether defendant intended to kill Otto when he first pointed the gun at him, or whether his intent was simply to scare Otto into handing over the crossbow. The question is whether defendant's criminal conduct created circumstances in which Otto was legally justified in resorting to self-defense against defendant. And the answer is a resounding "yes."

Unlike Vasquez, supra, 136 Cal. App. 4th 1176, defendant was the first to use unlawful force by pointing a revolver at Otto's head. At that point, Otto would have been legally justified in using lethal force to defend himself from defendant. (See Pen.Code, § 197 [homicide is justifiable "when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily

17

> injury, and imminent danger of such design being accomplished"].) This is so regardless of whether defendant actually intended to pull the trigger. Having set up such a situation, defendant cannot assert the benefit of the doctrine of imperfect self-defense. Nor were his constitutional rights violated by the failure to instruct on the doctrine.

Sharonoff, 2012 Cal. App. Unpub. LEXIS 1453, 2012 WL 637076, at * 5-6.

### D. Objective Reasonableness Under § 2254(d)

The state court's determination that petitioner was not entitled to an imperfect self-defense was not objectively unreasonable. California law, as the state court correctly noted, clearly holds that imperfect self-defense cannot be invoked "by a defendant whose own wrongful conduct (for example, a physical assault or commission of a felony) created the circumstances in which [the victim's] attack is legally justified." People v. Booker, 51 Cal. 4th 141, 182 (2011) (citations omitted), cert. denied, 565 U.S. 964 (2011). The petition before this court concedes that "appellant brought a gun to the encounter with [the victim] and pointed it at [the victim]." ECF No. 1 at 59. The state court's factual finding that petitioner was the first to use unlawful force by pointing his gun at the victim's head is supported by the record. RT 571. Indeed, petitioner does not appear to argue otherwise, since his petition states that "appellant brought a gun to the encounter with [the victim] and pointed it at the [victim]." ECF No. 1 at 59. His claim rests entirely on his contention that he had no intent to kill the victim and would have lowered the gun if requested to do so. Id. The state court found this argument lacking "even a modicum of merit" (Sharonoff, 2012 Cal. App. Unpub. LEXIS 1453, 2012 WL 637076, at * 5) and this court cannot disagree. The determination that the victim would have been justified in using force – even lethal force – to defend himself once the gun was pointed at his head was eminently reasonable.

In light of the foregoing, petitioner was not entitled to this instruction under state law and the trial court's decision not to provide it did not deprive him of a fair trial. This claim should be denied.

### CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to

AEDPA standards, petitioner has not established any violation of his constitutional rights.

IT IS HEREBY ORDERED that petitioner's motions for an evidentiary hearing (ECF Nos. 82 & 83) are denied.

Additionally, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See 28 U.S.C. § 2253(c)(2).

DATED: May 15, 2017

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE